**MURPHY et al. v. MITTELSTADT et al.**

**No. 11625.**

Court of Civil Appeals of Texas.
San Antonio.

May 15, 1946.

Rehearing Denied June 5, 1946.

Grover Sellers, Wm. J. R. King, Joe McCasland, and Geo. W. Barcus, all of Austin, for appellants.

Lee Minner, of McAllen, and E. G. Henrichson, of Edinburg, for appellees.

NORVELL, Justice.

This is an appeal from a judgment directing that a peremptory writ of mandamus issue commanding appellants, Ella Mae Murphy, Mrs. Lillie Stone and Mrs. E. L. Avery, in their official capacities as President and Directors of the State Board of Cosmetologists and Hairdressers, to forthwith issue to appellee Mrs. W. F. Mittelstadt a certificate of registration for the operation of the Val-Rie School of Beauty Culture in Pharr, Texas, in accordance with the provisions of Article 734b, Vernon's Ann.Pen.Code.

The case below was tried upon stipulation of the parties before the Hon. Bryce Ferguson, Judge of the District Court of Hidalgo County, 92d Judicial District, sitting without a jury.

Upon request being made therefor, the trial judge' adopted the stipulation as and for his findings of fact and filed complete and detailed conclusions of law.

The facts as disclosed by the stipulation and found by this Court are as follows:

1. Prior to the fiscal year beginning September 1, 1945, Mrs. W. F. Mittelstadt (plaintiff below) was a duly licensed and certified operator of the Val-Rie School of Beauty Culture located at Pharr, Texas.

2. Before September 1, 1945, Mrs. Mittelstadt transmitted to the Board of Cosmetologists and Hairdressers at Austin, Texas, the annual registration fee of $100, along with required health certificates and the fee required of her as a beautician and instructor.

These fees and certificates were received by said Board prior to September 1, 1945, and Mrs. Mittelstadt continued to operate her school of beauty culture after said date.

4. On January 2, 1946, said Board entered an order refusing to issue to Mrs. Mittelstadt a certificate of registration for the operating of a school of beauty culture for the year beginning September 1, 1945, and ending August 31, 1946. This action was taken without notice to Mrs. Mittelstadt and upon the grounds that she had been guilty of certain violations of the "Texas Beauty Culture Law." Mrs. Mittelstadt was notified of this action of the Board by letter dated January 4, 1946.

5. Mrs. Mittelstadt has never been tried in a court of competent jurisdiction for the violation of any article of the Penal Code which would have any bearing upon her right to be licensed as an operator of a beauty culture school.

6. While the Board has contended that it has the authority to consider applications for "certificates of renewal" as if they were original applications for licenses, the volume of business has resulted in action upon many certificates being delayed for many weeks, and during the interval of time between September 1st and the time of the issuance or refusal of a certificate of renewal, the Board has considered that applicants for certificates of renewal had the right to continue their operations.

The trial judge's conclusions of law are as follows:

"The disposition of both the issue of the plea in abatement herein (based upon the contention that Mrs. Mittelstadt had not exhausted her remedy before the Board under Art. 734b, § 20) and as well the merits of the controversy turns upon an interpretation of Chapter 116, Acts of the 44th Legislature, 1935, p. 304, which is commonly referred to as Article 734b of the Penal Code of the State of Texas, being the law concerning and governing licensing of operators of beauty shops and schools and creating the State Board of Cosmetologists and Hairdressers.

"Certain amendments to said Act have been adopted since the original enactment but they do not change the law in any manner affecting the controversy existing between the plaintiffs and defendants.

"A proper determination of the issues presented in this cause requires a consideration of practically all of said original legislation in its entirety; and the core of the matter is whether the legislature by such law vested in the State Board of Cosmetologists and Hairdressers power and authority to consider each successive year that beauty school applicants for license for each subsequent year as a new applicant for admission to license with the same power and authority to reject and refuse to certify such school in the same manner it has to reject and refuse to certify an applicant for license who for the first time seeks such certificate of license, or whether on the other hand, the law provides and contemplates that a school of beauty culture which has been a duly licensed school and has functioned and operated as such licensee during the preceding fiscal year may secure an extension and renewal of such license for the succeeding fiscal year by payment of annual registration fee of $100.00 together with satisfactory proof of such previous status as a licensee on or before August 31st of the expiring fiscal year.

"The difficulty in answering the foregoing question arises from the fact that there is no part of the act which expressly and specifically affords an answer thereto; and consequently the answer must come from viewing the act in its entirety, which is meagre and vague as to the exact powers delegated to such board apart from its functioning as examiner of applicants for license of beauty operators and the duty of the board to promulgate sanitary rules for beauty shops and beauty culture schools with the approval of the State Board of Health and the appointment of inspectors to inspect beauty shops and schools. The act in question made provision through what might be called a grandfather clause, for licensing of persons theretofore engaged in the trade of cosmetologist, hairdresser and beauty culture school for a certain period of time within the State of Texas, upon the mere payment of the initial license fees specified (Art. 734b, § 16), and further provided that such first certificates of registration and licenses

should be valid only until August 31st, 1936, and further provided 'that thereafter no certificate or license shall be issued for a longer period than one (1) year and shall expire on the 31st day of August, of the year for which they are issued unless renewed prior to that date. The holder of an expired certificate or license may have said certificate or license restored within one (1) year after the date of expiration, upon the payment of the required renewal fee and satisfactory proof of his or her qualification to resume practice. * * * the annual registration fee to conduct a beauty school shall be One Hundred Dollars ($100).' (Art. 734b, § 18.)

"Sec. 19 of the Act reads:

" 'The said Board created by this Act shall have the power to revoke or suspend certificates provided in this Act, when the registrant or licensee shall have been convicted of having violated any of the provisions of this law or shall have been convicted of a felony or shall have been convicted of drunkenness or of any offense in either the State or Federal Court involving the illegal use, sale or transportation of intoxicating liquor or narcotic drugs, and any person so charged shall have the right of trial by jury in the county or district where such offense is alleged to have been committed before the revocation or cancellation of such license shall become effective.

" '(a) The Board may refuse to grant a certificate to any person who shall fail to make a grade of seventy-five (75) in all subjects upon which they are examined, or to any person guilty of fraud in passing the examination and obtaining a certificate of authority to operate under the provisions of this Act at any time, or if such person shall be found guilty of a felony, or gross immorality or unprofessional or dishonest conduct, or should such person become addicted to the use of drugs or the habitual use of intoxicating liquor to such an extent as to render him or her unfit to practice in any of the occupations classified under this Act, and the Board shall further have authority to refuse to issue a permit or to cancel a permit issued to any one advertising by means of knowingly false and deceptive statements and for their failure to display the certificates as provided for in this Act.

" '(b) The license of an operator shall not be suspended or revoked by the Board without a trial de novo. The accused shall have a trial in the District Court of the county of her residence.'

"Sec. 20 of the Act relating to applicants for license who have been refused such certificate reads as follows:

" 'Sec. 20. Should any person who had made proper application for a certificate to practice under this Act and paid the fees provided for therein be refused such certificate, or in the case any such certificate shall be revoked or suspended, such person shall have the right to appeal to the Board for a hearing, and such hearing shall be conducted in accordance with the established rules of law for hearing and determination of civil suits in the State of Texas, and if the party so aggrieved shall be dissatisfied with the determination of such suit with the Board, they may then in such event appeal to the District Court of the county of her residence where a trial shall be had de novo.'

"Sections 1 and 2 of the Act prohibit any unlicensed operator from operating without a license and read as follows:

" 'Sec. 1. That it shall be unlawful for any person to engage in the practice or occupation of a hairdresser or cosmetologist or to conduct a hairdressing or cosmetological establishment or school, unless such person shall have first obtained a certificate of registration, and/or license as provided under this Act.

" 'Sec. 2. That it shall be unlawful for any person, firm, or corporation to operate a beauty shop or beauty school within the State, unless such shop or school is at all times under the direct supervision of a registered hairdresser or cosmetologist.'

"I conclude that the plain purport of the Act, when viewed as a whole, is that when a school or operator or instructor or other licensee has once been admitted to the status of such licensee after examination, inspection, and so forth, as may be required, the certificate evidencing such

status as licensee to be issued upon pay-- ment of the fees as required in the statute, authorizes the licensee to function as such until the 31st day of August following, and that thereafter such licensee by payment of the required annual registration fee (which is usually a smaller sum than the original fee required of the original applicants) on or before the expiration of the current fiscal year is entitled to have such certificate or license renewed for the ensuing fiscal year without further examination and upon such payment together with satisfactory evidence as to freedom from communicable diseases; and that as to such annual renewal the board has only a ministerial duty of certifying such renewal.

■ "I conclude that Section 19, sets out the conditions and predicate upon which and the procedure by which a license may be revoked or suspended, and that Section 20 prescribes the procedure whereby a person whose original application for admission to license has been refused may seek redress from such refusal if dissatisfied therewith.

"I conclude that the provisions of Section 19 relate only to revocation and suspension of the right of a person to the status of licensee and do not relate to the subject of persons aggrieved by a refusal of the board to admit such person to the status of licensee, and that Section 20 relates only to the procedure for persons who do not enjoy the status of licensees but who are disappointed by failure to be admitted to such status and who seek to be admitted or readmitted thereto.

"I conclude that the Legislature did not contemplate that the board should annually be burdened with examining, inspecting or determining the fitness of the 50,000 or more licensees throughout the State of Texas, who are entitled to renewal of their status for another twelve months as licensees by payment before the end of the current fiscal year of the annual registration fee accompanied by proper health certificates. Because it is obvious that since such renewals may be sent in any time prior to August 31st of the current year, the volume thereof, would make it impossible for the board to process the same within a period of many weeks after September 1st of the ensuing year; and if such licensees so remitting their annual registration fees were not thereby continued in the status of licensees, they would by provisions of Sections 1 and 2 of the Act be prohibited from working at their trade as such licensees from September 1st until some time perhaps many weeks later when the board could get around to certifying to such renewal or certifying to such license. And in this connection from the stipulations of the parties it appears that the board itself has consistently regarded all such licensees as have timely sent in such annual registration fee as being entitled to pursue their respective trades as licensees; and in keeping with this attitude the board regarded the petitioner, Mittelstadt, as a licensed beauty culture school, at least, until the date the board determined that she should not be licensed as such.

■ "I conclude that the petitioner Mrs. Mittelstadt was and is at all times since August 31, 1945, a duly licensed school of beauty culture, and that her license could only be terminated by suspension or revocation thereof upon the predicate and the procedure as set out in Section 19 of the Act; and I further conclude in this connection that the procedure set out in Section 20, is not applicable to the petitioner, Mittelstadt, since she is not an original applicant for license seeking from the board admission into the sorority of beauty operators and schools of beauty culture whose application the board has refused, but rather that she has been all along a member of the sorority and has kept in good standing by the payment of the annual registration fee accompanied by proper certificates and can be expelled from the sorority only upon the predicate and according to the procedure set out in Section 19.

"It should be obvious to any one familiar with the usual time consumed in the disposition of contested cases that the time which would likely and almost inevitably be consumed in the trial of the original criminal case in the county court and the appeal therefrom and the subsequent trial do novo thereafter before the board and the subsequent trial de novo thereafter

in the district court together with the appeals therefrom as outlined in Section 19 of the Act, would extend over a period far in excess of twelve months which is the maximum period for which a renewal of license may be had by any one annual registration payment. I presume the Legislature knew somewhat of the time necessary to complete the cycle of such procedure; and that they were not so foolish as thus jealously (by such series of original criminal cases followed by successive trials de novo before the board and then in the district court) to guard something so transitory as that it would wholly cease to exist within a period of less than twelve months; and particularly, it does not seem likely that· the Legislature intended on the one hand to prescribe such obstacles to the revocation of an annual license and at the same time clothe the board of examiners with discretion (without any such conviction and without any such trial de novo) to determine upon evidence deemed by such board to be satisfactory to terminate the status of licensee.

"However, when the distinction is appreciated between the power and authority of the board when acting upon an original application on the one hand and the mere ministerial duty of the board when certifying to an annual renewal of an existing license on the other hand, then in the light of such distinction, the procedure as set out in Section 20, relating to disappointed applicants for original license on the one hand and the procedure set out in Section 19, concerning the predicate and procedure for forfeiture of license becomes intelligible and logical; and, obviously, the status of licensee and the *right of annual renewal thereof* is the thing that may be suspended or revoked under the procedure set out in Section 19, even though it may take two or three years to conclude the series of trials and trials de novo contemplated thereunder with the licensee still continuing to operate and keep his licensed status in effect by regular and prompt payments of annual renewal registration fees; whereas, Section 20 relates to one who is not presently licensed and to one who seeks and applies to be admitted to such status, or to one who seeks to be readmitted to such status.

.  "I conclude as a matter of law that under the stipulated facts and the pleadings of the parties the petitioner is entitled to maintain her action in this forum without having sought a hearing before the board, and further that petitioner is entitled to mandamus the board to so recognize her as such licensee by certifying to her status as such and by according her school full recognition as such licensee and to have the board recognize credit of its students in the usual manner accorded to other licensed schools of beauty culture."

We approve the conclusions of law filed by the trial court and adopt the same as the conclusions ˙of law of this Court. Rule 453, R.C.P.

The judgment of the District Court is affirmed.